<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BOGEN COMMUNICATIONS, INC., | |
| Petitioner, | Civ. No. 04-6275 (WGB) |
| v. | **M E M O R A N D U M** |
| | **O P I N I O N** |
| TRI-SIGNAL INTEGRATION, INC., | |
| Respondent. | |

**APPEARANCES:**

George R. Hirsch
**Bressler, Amery & Ross, PC**
PO Box 1980
Morristown, New Jersey 07962

        Counsel for Petitioner

Michael Macmanus
**Latham & Watkins**
One Newark Center
16th Floor
Newark, New Jersey 07101

        Counsel for Respondent


**BASSLER, SENIOR DISTRICT JUDGE:**

        On November 12, 2004, Respondent Tri-Signal Integration

("Tri-Signal"), a company that specializes in the design and

installation of fire safety and communications systems, sued

Petitioner Bogen Communications ("Bogen"), a manufacturer and

seller of sound systems and telephone peripherals, in the United

States District Court for the Central District of California

1

("California action").  The parties stipulated to a stay of the
California action pending the outcome of Bogen's petition in this
Court to compel arbitration pursuant to the Federal Arbitration
Act ("FAA"), 9 U.S.C. § 4.

Section 4 of the FAA enables a litigant to invoke the
authority of a federal district court in order to force a
reluctant party to arbitrate a dispute.  Under section 4:

> A party aggrieved by the alleged failure,
> neglect, or refusal of another to arbitrate
> under a written agreement for arbitration may
> petition any United States district court
> which, save for such agreement, would have
> jurisdiction under Title 28, in a civil
> action or in admiralty of the subject matter
> of a suit arising out of the controversy
> between the parties, for an order directing
> that such arbitration proceed in the manner
> provided for in such agreement....  The court
> shall hear the parties, and upon being
> satisfied that the making of the agreement
> for arbitration or the failure to comply
> therewith is not in issue, the court shall
> make an order directing the parties to
> proceed to arbitration in accordance with the
> terms of the agreement.... If the making of
> the arbitration agreement or the failure,
> neglect, or refusal to perform the same be in
> issue, the court shall proceed summarily to
> the trial thereof....

9 U.S.C. § 4.

The FAA does not provide an independent basis for subject
matter jurisdiction.  <u>Moses H. Cone Mem'l Hosp. v. Mercury
Constr. Corp.</u>, 460 U.S. 1, 26 n.32 (1983).  "Section 4 provides
for an order compelling arbitration only when the federal
district court would have jurisdiction over a suit on the

underlying dispute; hence, there must be diversity of citizenship or some other independent basis for federal jurisdiction before the order can issue." <u>Id</u>.

Bogen is a corporation organized under Delaware law with its principal place of business in New Jersey. (<u>See</u> Contractor Agreement.)  Tri-Signal is a California corporation with its principal place of business in California. (<u>See</u> Dec. of Robert McKibben.)  The amount in controversy alleged in the California action exceeds $75,000.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

For the reasons set forth below, Bogen's petition to compel arbitration is denied.

**I. Background**

The relevant facts are essentially undisputed.  In January 2000, Tri-Signal and Bogen entered into a Contractor Agreement, authorizing Tri-Signal to sell Bogen products.  The Contractor Agreement (the "Agreement") provides for a termination date on December 31, 2000.  (Contractor Agreement at § 8.1.)  The termination provision states that the "Agreement shall not be renewed except pursuant to a written agreement executed by both parties."  (<u>Id</u>.)  The Agreement also includes an arbitration clause that encompasses "[a]ny controversy relating to [the] Agreement or the breach thereof...."  (<u>Id</u>. at § 11.1.)

The parties continued doing business after the termination

3

of the Agreement on December 31, 2000.  Tri-Signal claims that the parties' post-Agreement relationship was separate and distinguishable from that under the original Agreement. (Respondent's Br. at 5.)  On the other hand, Bogen claims that the parties merely modified the Agreement and its basic provisions still controlled their actions.  (Petitioner's Br. at 3.)  Regardless of whether there was a new contract, both parties stipulate that their post-Agreement business was similar to that prior to its termination.

Bogen and Tri-Signal continued to operate in lieu of a formal agreement until May 7, 2003, at which time Bogen notified Tri-Signal that it was terminating the parties' distribution relationship.  Bogen's reasons remain in contention.  The parties' business relationship, however, did not end but it continued to slowly deteriorate through January 30, 2004.  At that time Bogen again provided Tri-Signal with a notice of termination.  Tri-Signal then initiated the California action.

In the California action, none of Tri-Signal's claims for relief are based on Bogen's actions during the term of the Agreement.  They stem from the alleged implied and oral contracts of the parties as well as possible contractual interference after December 31, 2000.  (See C.D.Ca. Complaint 04-cv-9295 at ¶¶ 31-59.)

The issue presented is whether Tri-Signal may be forced to

4

arbitrate its post-Agreement claims absent a new contract but where the parties conducted their post-Agreement business similar to that before the Agreement terminated.

## II. Analysis

"The Arbitration Act [9 U.S.C. § 1, et seq.] establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, 473 U.S. 614, 626 (1985) (citing Moses H. Cone Mem'l Hosp., 460 U.S. at 24-25). The Supreme Court has held:

> The first principle [of arbitrability] is that arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit.
>
>             *   *   *
>
> [The second principle of arbitrability] is that the question of arbitrability -- whether [an agreement] creates a duty for the parties to arbitrate [a] particular grievance -- is undeniably an issue for judicial determination.
>
>              *   *   *
>
> The third principle derived from our prior cases is that, in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims.
>
>              *   *   *
>
> Finally, it has been established that where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that an order to arbitrate the

> particular grievance should not be denied
> unless it may be said with positive assurance
> that the arbitration is not susceptible of an
> interpretation that covers the asserted
> dispute.  Doubts should be resolved in favor
> of coverage.

AT&T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 648-50 (1986) (internal citations omitted).

In short, if the Court finds that there exists no valid agreement to arbitrate, it must enjoin arbitration, but should the Court conclude that such an agreement exists and the dispute falls within the scope of the agreement, the matter must be referred to arbitration.  PaineWebber, Inc. v. Hartmann, 921 F.2d 507, 511 (3d Cir. 1990) (overruled by implication on other grounds by Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 82-83 (2002)).  Respectful of the well-recognized federal policy favoring arbitration, the Court nonetheless finds that this case falls short of an agreement to arbitrate.

In support of its petition to arbitrate, Bogen emphasizes the Third Circuit's decision in PaineWebber Inc. v. Hartmann, 921 F.2d 507, 511 (3d Cir. 1990), which held that 9 U.S.C. § 4 requires the district court to engage in a limited review to ensure that the dispute is arbitrable.  The limited review by the court, Bogen contends, should not include the issue of whether the Agreement extended beyond its termination; rather, that question should be left for the arbitrator to decide. (Petitioner's Reply Br. at 1.)

Although there is a presumption of abitrability, and the

parties' Agreement contains an arbitration clause, it does not follow that the Court is required to decide that all issues, including those outside of the terms their Agreement, are arbitrable.  It is necessary to determine the term and limitations of the Agreement in order to decide if the parties actually agreed to arbitrate.  First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995) ("Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clear and unmistakable' evidence that they did so.").

Consideration of the scope of the Agreement provides a gauge as to whether the parties intended to extend the Agreement beyond its termination.  "[P]arties have it within their power to specify the date and hour at which their obligation to arbitrate is to end.... Where they have done so, there is nothing fairly arguable to refer to arbitration."  National Railroad Passenger Corp. v. Boston & Maine Corp., 850 F.2d 756, 762 (D.C.Cir. 1988) (cited with approval in PaineWebber Inc., 921 F.2d at 511).

The facts of National Railroad are significantly analogous to those presented here.  In National Railroad, the D.C. Circuit reviewed the district court's decision to send to arbitration the question of whether the parties contract had expired.  The "all-encompassing arbitration clause" required every claim under the contract, including its interpretation and its term, to be submitted to arbitration.  Id. at 758-59.  The Circuit Court,

7

considering the second principle under AT&T Technologies, *supra*, looked to "whether the parties, at the time they entered into the contract, intended that disputes over the duration of the contract would be decided by a court or by the arbitrators -- i.e., whether they agreed to arbitrate disputes over contract expiration." Id. at 759-60. This Court gleans from National Railroad a well-reasoned approach for resolving disputes over the expiration or termination of an arbitration clause. See id. at 762.

The Agreement between Bogen and Tri-Signal provides that it shall "termin[ate] on December 31, 2000.... [and] *shall not be renewed except pursuant to a written agreement executed by both parties.... This Agreement may be renewed only in a writing signed by both parties*." (Contractor Agreement at § 8.1 (emphasis added).) There is nothing within the Term and Termination provision or the Arbitration provision that suggests the Agreement may be extended without a written agreement. Although the Arbitration provision provides that "*[a]ny controversy relating to [the] Agreement*" is subject to arbitration, the Court finds that this clause does not alone extend the Agreement beyond its clearly defined term. (Contractor Agreement at § 11.1 (emphasis added)); National Railroad Passenger Corp., 850 F.2d at 763 ("if a contract provides that 'all disputes between the parties shall be

8

arbitrated,' but with equal clarity provides that it will expire
on a date certain, then any dispute over whether the contract
actually expired or was extended by the parties must be decided
by the court rather than by the arbitrator.")  The unambiguous
and narrow language of the Agreement's expiration date, and the
fact the Agreement does not contain an automatic renewal
provision nor a provision expressly delegating to the arbitrator
the determination of term of the Agreement, leads to the Court's
conclusion that the parties did not intend for the issue of the
term of the Agreement to be decided by an arbitrator.

Bogen urges the Court to ignore the absence of an automatic
extension clause because "the parties continued to conduct
business substantially in accordance with the provisions" of the
Agreement beyond the termination date.  (Petitioner's Br. at 2-
3.)  As stated above, however, the Court cannot disregard this
central issue for it would be assuming the parties contracted to
arbitrate.  The fact that Bogen and Tri-Signal continued their
business relationship does not mean that the same rights and
obligations under the expired contract persisted.  Hudson v.
Radnor Valley Country Club, 1996 U.S. Dist. LEXIS 4559, *5
(E.D.Pa. 1996) (citing Korody Marine Corp. v. Minerals &
Chemicals Philipp Co., 300 F.2d 124, 125 (2d Cir. 1962)); see
also N.J. Stat. § 12A:2-209(2) (a signed agreement which excludes
modification or rescission except by a signed writing cannot be

otherwise modified or rescinded).

Since there is no valid agreement to arbitrate claims arising after the termination of the Agreement, except those arising under a prior breach during the course of the Agreement, the Court is obligated to deny the petition to compel arbitration.  <u>PaineWebber Inc.</u>, 921 F.2d at 511.

## III. Conclusion

For the reasons set forth above, Bogen's petition to compel arbitration is **denied**.

An appropriate Order follows.


　　　　　　　　　　　　　　　　　　　　/s/ William G. Bassler
_____
　　　　　　　　　　　　　　　　WILLIAM G. BASSLER, U.S.S.D.J.

Dated:    February 22, 2006

10